IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES MEULEMANS,<br><br>          Plaintiff,<br><br>v.<br><br><br>ENABLE MIDSTREAM PARTNERS, LP, ENABLE GP, LLC, LUKE R. CORBETT, ROBERT G. GWIN, ALAN N. HARRIS, RONNIE K. IRANI, PETER H. KIND, RODNEY J. SAILOR, SEAN TRAUSCHKE, R.A. WALKER,<br><br>          Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff James Meulemans ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Enable Midstream Partners, LP ("Enable Midstream" or the "Partnership") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, unitholder communications, and postings on the Partnership's website concerning the Partnership's public statements; and (d) review of other publicly available information concerning Enable Midstream and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Enable Midstream and the Partnership's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the Partnership's proposed transaction with Energy Transfer LP ("Energy Transfer"), Elk Merger Sub LLC ("LP Merger Sub"), Elk GP Merger Sub, LLC ("GP Merger Sub," and together with LP Merger Sub, the "Merger Subs"), Enable GP, LLC (the "General Partner"), LE GP, LLC ("ET GP"), and CenterPoint Energy, Inc. ("CenterPoint") (the "Proposed Transaction").

2. On February 16, 2021, the Partnership entered into an Agreement and Plan of Merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement among other things: (i) LP Merger Sub will merge with and into Enable Midstream, with Enable Midstream surviving as a wholly-owned subsidiary of Energy Transfer; and (ii) Enable Midstream's unitholders will receive 0.8595 common units of Energy Transfer for each unit of Enable Midstream they own (the "Merger Consideration").

3. On April 9, 2021, in order to convince the Partnership's unitholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Enable Midstream and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to

Enable Midstream unitholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits unitholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Enable Midstream common units.

9. Defendant Enable Midstream is a Delaware limited partnership and has its principal executive offices located at 499 West Sheridan Avenue, Suite 1500, Oklahoma City, Oklahoma. The Partnership's common units trade on the New York Stock Exchange under the symbol "ENBL."

10. Defendant General Partner is a Delaware limited liability company and the sole general partner of Enable Midstream.

11. Defendant Luke R. Corbett ("Corbett") is and has been a director of Enable Midstream at all times during the relevant time period.

12. Defendant Robert G. Gwin ("Gwin") is and has been a director of Enable Midstream at all times during the relevant time period.

13. Defendant Alan N. Harris ("Harris") is and has been a director of Enable Midstream at all times during the relevant time period.

14. Defendant Ronnie K. Irani ("Irani") is and has been a director of Enable Midstream at all times during the relevant time period.

15. Defendant Peter J. Kind ("Kind") is and has been a director of Enable Midstream at all times during the relevant time period.

16. Defendant Rodney J. Sailor ("Sailor") is and has been the President, Chief Executive Officer, and a director of Enable Midstream at all times during the relevant time period.

17. Defendant Sean Trauschke ("Trauschke") is and has been a director of Enable Midstream at all times during the relevant time period.

18. Defendant R.A Walker ("Walker") is and has been a director of Enable Midstream at all times during the relevant time period.

19. Defendants Corbett, Gwin, Harris, Irani, Kind, Sailor, Trauschke, and Walker are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants, along with Defendants Enable Midstream and General Partner, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Partnership

21.   Enable Midstream is a publicly traded limited partnership owning, operating and developing strategically located natural gas and crude oil infrastructure assets. The Partnership's assets include approximately 14,000 miles of natural gas, crude oil, condensate and produced water gathering pipelines, approximately 2.6 billion cubic feet per day ("Bcf/d") of natural gas processing capacity, approximately 7,800 miles of interstate pipelines (including Southeast Supply Header, LLC ("SESH") of which the Partnership owns 50%), approximately 2,200 miles of intrastate pipelines and seven natural gas storage facilities comprising 84.5 billion cubic feet of storage capacity.

### The Partnership Announces the Proposed Transaction

22.   On February 17, 2021, the Partnership jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> DALLAS & OKLAHOMA CITY--(BUSINESS WIRE)--Feb. 17, 2021--Energy Transfer LP (NYSE: ET) ("ET" or "Energy Transfer") and Enable Midstream Partners, LP (NYSE: ENBL) ("Enable") today announced that they have entered into a definitive merger agreement whereby Energy Transfer will acquire Enable in an all-equity transaction valued at approximately $7.2 billion. Under the terms of the agreement, Enable common unitholders will receive 0.8595 ET common units for each Enable common unit, an exchange ratio that represents an at-the-market transaction, based on the 10-day volume-weighted average price of ET and Enable common units on February 12, 2021. In addition, each outstanding Enable Series A preferred unit will be exchanged for 0.0265 Series G preferred units of Energy Transfer. The transaction will include a $10 million cash payment for Enable's general partner.
>
> \*   \*   \*
>
> **Timing and Conference Call Information**
>
> The transaction has been approved by the Board of Directors of ET and the Conflicts Committee and the Board of Directors of Enable. The two largest

unitholders of Enable, OGE Energy Corp. ("OG&E") and CenterPoint Energy, Inc. ("CNP"), which also control the General Partner of Enable, have entered into support agreements, pursuant to which they have agreed to vote their Enable units in favor of the merger, upon effectiveness of the S-4 Registration Statement with the SEC. These two unitholders own approximately 79.2% of Enable's outstanding common units. The transaction is expected to close in mid-2021 and is subject to the satisfaction of customary closing conditions, including Hart Scott Rodino Act clearance. Upon closing, Enable unitholders are expected to own approximately 12 percent of Energy Transfer's outstanding common units.

Energy Transfer will host a conference call February 17 at 4:00 p.m. Central Time / 5:00 p.m. Eastern Time to discuss this transaction along with its fourth quarter and full-year 2020 results. The conference call will be broadcast live via a webcast, which can be accessed through https://www.energytransfer.com/.

**Advisors**

Citi and RBC Capital Markets acted as financial advisors to Energy Transfer and Latham & Watkins LLP acted as legal counsel. Goldman Sachs & Co. LLC acted as financial advisor to Enable and Vinson & Elkins LLP acted as legal counsel. Intrepid Partners, LLC acted as financial advisor and Richards, Layton & Finger, PA acted as legal counsel to Enable's conflicts committee.

### FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

23. On April 9, 2021, the Partnership authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Partnership's unitholders vote in favor of the Proposed Transaction.

24. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Partnership's unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Partnership's unitholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Partnership's Financial Projections

25. The Proxy Statement contains projections prepared by the Partnership's and Energy Transfer's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28. Specifically, with respect to the Partnership's projections, the Partnership must disclose the line item projections for the financial metrics that were used to calculate the non-

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

GAAP measures, including: (i) Adjusted EBITDA; and (ii) Distributable Cash Flow; and (iii) Unlevered Free Cash Flow.

29. With respect to Energy Transfer's projections, the Partnership must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Distributable Cash Flow.

30. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide unitholders with a better understanding of the analyses performed by the Partnership's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Opinions

31. The Proxy Statement contains the financial analyses and opinion of Goldman Sachs & Co. LLC ("Goldman Sachs") and Intrepid Partners, LLC ("Intrepid") concerning the Proposed Transaction, but fails to provide material information concerning such.

32. With respect to Goldman Sachs' *Illustrative Unlevered Discounted Cash Flow Analysis – Enable*, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the inputs and assumptions underlying Goldman Sachs' use of the discount rates ranging from 8.0% to 9.5%; (iii) the inputs and assumptions underlying Goldman Sachs' use of perpetuity growth rates ranging from (2.1)% to 0.5%; (iv) the terminal values; and (v) the total number of fully diluted outstanding Enable common units.

33. With respect to Goldman Sachs' *Illustrative Present Value of Future Unit Price Analysis—Enable*, the Proxy Statement fails to disclose: (i) the basis for selecting a discount rate of 10.5%; (ii) the reasons for utilizing CAPM; and (iii) the CAPM inputs including Enable's

target capital structure weightings, the cost of preferred equity, the cost of debt and a beta for Enable.

34. With respect to Goldman Sachs' *Illustrative Present Value of Future Unit Price Analysis—Pro Forma Energy Transfer*, the Proxy Statement fails to disclose: (i) the basis for selecting a discount rate of 8.0%; (ii) the reasons for utilizing CAPM; (iii) the CAPM inputs including Enable's target capital structure weightings, the cost of preferred equity, the cost of debt and a beta for Enable; and (iv) the pro forma projections utilized in the analysis.

35. With respect to Intrepid's *Comparable Company Trading Analysis* the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analyses.

36. With respect to Intrepid's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analyses; (iii) the terminal values; (iv) the net debt used in the analyses; and (v) the fully diluted common units outstanding used in the analyses.

37. With respect to Intrepid's *Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

38. With respect to Intrepid's *Precedent Premiums Paid Analysis*, the Proxy Statement fails to disclose the premiums paid in the transactions.

39. Lastly, the Proxy Statement fails to disclose the amount of the financial advisors' compensation that is contingent upon the consummation of the Proposed Transaction.

40. When a banker's endorsement of the fairness of a transaction is touted to unitholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides unitholders with a basis to project the future financial performance of a company and allows unitholders to better understand the financial analyses performed by the Partnership's financial advisor in support of its fairness opinion.

41. Without the above described information, the Partnership's unitholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide unitholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

44. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is

made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45. Defendants have issued the Proxy Statement with the intention of soliciting unitholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Partnership.

46. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

47. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

48. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are

no material misstatements or omissions.

49. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Partnership's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Partnership's financial projections.

50. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Enable Midstream within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Enable Midstream, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading

statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

56. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 9, 2021                                   Respectfully submitted,

                                                      By: */s/ Joshua M. Lifshitz*
                                                      Joshua M. Lifshitz
                                                      Email: jml@jlclasslaw.com

                  **LIFSHITZ LAW FIRM, P.C.**
                  1190 Broadway
                  Hewlett, New York 11557
                  Telephone: (516) 493-9780
                  Facsimile: (516) 280-7376

                  *Attorneys for Plaintiff*